IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                                                    )
                                                          )
FRANCES OLIVER WARD,                  )     Case No. 06-42411
                                                          )
              Debtor.                             )

ORDER OVERRULING CHAPTER 13 TRUSTEE'S
MOTION TO DENY TO CONFIRMATION

The Chapter 13 Trustee filed a motion to deny confirmation of Debtor Frances Oliver Ward's proposed Chapter 13 Plan. The issue is whether the Debtor is proposing to pay into her plan all of her "projected disposable income to be received in the applicable commitment period" as required by § 1325(b) of the Bankruptcy Code.[1] This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons that follow, the Trustee's Objection will be OVERRULED.

The Debtor filed her voluntary Chapter 13 Petition on September 13, 2006. Her original Schedule I listed gross monthly income from employment of $2,941.47, plus $1,100 in social security income, and $1,104.52 in pension or retirement income. After payroll deductions from her employment income, the Debtor has total net monthly income of $4,222.77. Her original Schedule J showed total expenses of $3,728.68, leaving a monthly net surplus of $494.09. Her original Form B22C properly excluded the social security income and thus showed gross wages of $2,941 and pension and retirement income of $1,104, for a

---

[1] 11 U.S.C. § 1325(b)(1).

total of $4,045. This results in annualized current monthly income of $48,540, which is above Missouri's median income for a family of one, which is $36,696. After making various deductions on the Form B22C totaling $4,030.50 per month, the Debtor showed monthly disposable income of $14.50.

The Debtor's Plan proposes to pay $490 per month. Her house payment is to be paid directly by the Debtor outside of the Plan. Attorneys' fees and the Debtor's car payment are to be made through the Plan. The Debtor did not check any of the boxes selecting a type of plan, but added a remark which says:

> The plan proposes a minimum of 60 monthly payments. After the allowed secured and priority claims and administrative expenses are satisfied, the balance of the payments will be disbursed to the allowed non-priority unsecured claims on a prorate [sic] basis.

The Chapter 13 Trustee objected to the Plan, in part because the Debtor had improperly included an automobile payment of $500 on her original Schedule J for a car that was being paid through the Plan. In response to the Trustee's Objection, the Debtor amended her Schedule I to remove her social security income and added the following comment at the bottom of the page:

> $1100 of SSI has been excluded from Schedule I per In re: Schanuth 342 BR 601,[2] "..the Court cannot compel the Debtors to include those benefits in their calculation of disposable income."

Without the social security income, her amended Schedule I thus shows total monthly income of $3,023.25. The Debtor also amended Schedule J to remove the automobile payment and

---

[2] The Debtor is referring to *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006).

certain other expenses, such that monthly expenses were reduced to $2,533.68, resulting in a monthly surplus of $489.57. Although the Court denied confirmation of the Plan because the Debtor did not file a response to the Trustee's Objection to Confirmation, the Debtor requested a hearing on the Trustee's Objection so that the parties could obtain guidance on the issue of treatment of the Debtor's social security income. Following the hearing, the parties filed briefs in support of their respective positions.

The Trustee asserts that the Plan fails to comply with § 1325(b)(1)(B) because the Debtor did not include all sources of income on her amended Schedule I and, further, she has excess monthly net income over and above the proposed plan payment which she could contribute to the plan, thereby providing a more significant dividend to filed and allowed nonpriority unsecured claims. According to the Trustee, the Plan's $490 monthly payments for sixty months will result in a base of $29,400, the bulk of which will go to pay the vehicle claim of $19,862.89. As proposed, the Plan results in a dividend of less than 3% to nonpriority unsecured creditors' claims which, as filed, currently total $46,479.95. If the Debtor had included her social security income on her amended Schedule I, her schedules would have shown a monthly surplus of nearly $1,600 available for plan payments. In essence, the Trustee says that, although social security benefits are excluded from the means test calculation, they nevertheless should be considered for plan confirmation purposes.

The Debtor disagrees, saying Congress explicitly excluded social security benefits from the analysis for plan confirmation. She asserts a debtor need not even list it on Schedule I as income, unless the debtor wants to voluntarily have it included, such as for feasibility purposes.

Section 1325(b)(1)(B) provides that, if the trustee or the holder of an allowed unsecured claim objects to confirmation of a plan, then the court may not approve the plan unless, as of the effective date of the plan, "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."[3]

Because the Debtor is above-median, § 1325(b)(3) requires her to calculate her "disposable income" according to the means test found in § 707(b)(2).[4] "Disposable income" under this test is the Debtor's "current monthly income," which is based on the average of the income she received in the six-month period ending on the last day of the calendar month prior to the filing of the case, less amounts reasonably necessary to be expended as determined in accordance with § 707(b)(2).[5] Section 101(10A), which defines "current monthly income," expressly excludes social security income from this calculation.[6]

While acknowledging that Congress intended to take away discretion from the courts by enacting the means test, the bankruptcy courts in this district have held that a mechanical application of it in the context of plan confirmation often produces results that could not have

---

[3] 11 U.S.C. § 1325(b)(1)(B).

[4] 11 U.S.C. § 1325(b)(3).

[5] 11 U.S.C. § 101(10A).

[6] *Id.*

4

been intended by Congress.[7] Further, because the means test is based on "current monthly income" ("CMI"), which is a historical average sometimes having nothing to do with reality, we have determined that the phrase "projected disposable income" in § 1325(b)(1)(b) cannot mean that we are to mechanically apply the means test to determine how much should be paid into the plan for payment of unsecured creditors. "Instead, the Form B22C means test serves merely as a starting point in determining the amount of projected disposable income available to unsecured creditors."[8] In other words, CMI is presumed to be representative of the debtor's projected income, unless it is shown that CMI does not accurately reflect a debtor's true projected, or prospective, income.[9]

That being said, however, the Debtor is correct that Congress expressly conferred special treatment to social security benefits and, as Judge Venters said in *In re Schanuth*:

> In light of 11 U.S.C. § 101(10A)'s explicit exclusion of social security benefits from the calculation of CMI, however, the Court cannot compel the Debtors to include those benefits in their calculation of disposable income. But there is nothing in the statute that precludes the Debtors from voluntarily devoting a portion of that income to a chapter 13 plan or that prevents the Court from considering that income in evaluating the feasibility of a plan proposed by the Debtors.[10]

Hence, it is not appropriate to disregard CMI "where the additional income offered to rebut

---

[7] *See, e.g., In re Gress*, 344 B.R. 919, 923 (Bankr. W.D. Mo. 2006); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006); *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006).

[8] *In re Gress*, 344 B.R. at 923.

[9] *In re Schanuth*, 342 B.R. at 606 n. 12 (citing *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006)).

[10] *Id.* at 606.

5

CMI's accuracy is derived from a source that 11 U.S.C. § 101(10A)(B) specifically excludes from the calculation of CMI."[11]

Accordingly, the Debtor is correct that her social security income is not required to be included in the analysis of whether she is contributing all of her "projected disposable income" to her plan under § 1325(b)(1)(B). Her Plan, which proposes to pay all of her projected disposable income except social security income, meets the requirements of § 1325(b)(1)(B).

However, a debtor is still required under the new law to propose a plan which meets § 1325(a)(3)'s good faith requirement. The courts addressing this issue are split on the question of whether a debtor who satisfies the requirements of § 1325(b)(1), but who is not devoting all of his or her actual disposable income to the plan, meets § 1325(c)(3)'s good faith requirement.[12] In the Eighth Circuit, even after the 1984 amendments added § 1325(b)'s disposable income test, a good faith determination under § 1325(c)(3) requires the court to

---

[11] *Id.* at 606 n. 12.

[12] *See In re Edmunds*, 350 B.R. 636 (Bankr. D. S.C. 2006) (holding that the strict mechanical application of the means test does not necessarily satisfy a debtor's burden of demonstrating good faith in the proposal of a plan under § 1325(c)(3), including whether they are devoting sufficient income to their plan); *In re LaSota*, 351 B.R. 56 (Bankr. W.D. N.Y. 2006) (holding that, although a strict application of the means test showed the debtors were contributing the necessary amount to their plan, neither the "projected" disposable income test, nor § 1325(a)(3)'s good faith requirement, either independently or in combination, permitted the debtors to accumulate savings while paying unsecured creditors less than 100%). *But see In re Farrar-Johnson*, ___ B.R. ____, 2006 WL 2662709 (Bankr. N.D. Ill. 2006) (holding that determination of whether debtor is devoting sufficient disposable income to the plan is determined under § 1325(b), rather than as an element of good faith under § 1325(c)(3)); *In re Barr*, 341 B.R. 181 (Bankr. M.D. N.C. 2006) (holding that Form B22C controls, even if the resulting plan would fail the pre-BAPCPA good faith test under § 1325(a)(3)).

consider, among other things, whether the debtor has unfairly manipulated the Code.[13] The BAPCPA amendments did nothing to eliminate that inquiry. The question thus remains as to whether a debtor taking advantage of a BAPCPA benefit expressly authorized by Congress might still be unfairly manipulating the Code.[14] However, since the Trustee has not here raised bad faith as a basis for denying confirmation, I need not decide that issue here.

Finally, the Debtor is incorrect in her assertion that social security income need not even be listed on Schedule I. Even though social security income may not be considered as part of the means test analysis and is thus excluded from Form B22C, nothing has changed with regard to the requirement that a debtor file complete and accurate schedules as prescribed by the appropriate Official Forms in accordance with § 521(a)(1) and Rule 1007. The requirement that debtors file schedules showing "current income and current expenditures" in those provisions is simply not the same as the defined term, "current monthly income" in § 101(10A), which is a six-month average excluding social security. In contrast to the means test's "projected monthly income" based on historical averages and presumed amounts, the schedules are intended to reveal the reality of the debtor's situation, even if it includes items

---

[13] *In re White*, 255 B.R. 737, 744 (Bankr. W.D. Mo. 2000) (citing *Education Assistance Corp. v. Zellner (In re Zellner)*, 827 F.2d 1222 (8th Cir. 1987); *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346 (8th Cir. 1990)).

[14] At least one court has indicated that social security benefits are entirely excluded from plan confirmation analysis. *See In re Rotunda*, 349 B.R. 324 (Bankr. N.D. N.Y. 2006) (holding that a debtor is still required to propose a plan which meets the standards of good faith under § 1325(a)(3), but since Congress expressly excluded social security benefits from the payment of unsecured creditors' claims, the trustee could not maintain an objection to confirmation based on the debtors' refusal to include social security benefits in their plan payments).

not considered in, or different from, the means test. Moreover, trustees and other parties determining whether a debtor has contributed her "projected monthly income" to the plan are fully capable of considering the implications of social security income being listed on Schedule I. The Debtor's amended Schedule I, therefore, is inaccurate and should be amended.

ACCORDINGLY, because social security income is to be excluded from the analysis of whether a debtor is contributing all "projected disposable income" to the plan under § 1325(b)(1)(B), the Trustee's Motion to Deny Confirmation of the Debtor's Plan on the ground that the Debtor is not devoting her social security income to the Plan is OVERRULED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 1/7/07